On December 17, 1941, Victoria Matthews, the plaintiff and appellee herein, filed this suit against the Louisiana Industrial Life Insurance Company, Inc., seeking to recover the sum of $500 for permanent, total disability under the terms of two combination life, accident and health insurance policies issued to her by the company. The disability complained of is total and permanent blindness alleged to have occurred in January, 1941.
Under the terms and by the provisions of the two policies, the plaintiff and insured is entitled to receive $5 per week for a period not exceeding 100 weeks ($3 on one policy and $2 on the other) in the event that through accident she sustained an injury resulting in total and permanent disability within sixty days from the accident, and for a like and similar amount and period where total and permanent disability resulted from sickness but with the further and additional provision, in the case of disability from sickness, that the number of weekly payments for such disability shall be limited to twenty weeks in any consecutive twelve months.
On the original trial of this suit, the lower court rendered judgment dismissing plaintiff's suit, and from that judgment on appeal (see La.App., 11 So.2d 80) we held that plaintiff was entitled to and should be given the opportunity to prove that she is totally blind and that she became so during the life of her policies and that such blindness is permanent and incurable. We further stated at that time that if it be shown and proved that she is disabled by blindness, she is so disabled from such sickness that would entitle her to benefit payments under the terms of the policies, and entitled to recover the full amount of benefits for each week for the maximum number of weeks provided for, which, by the terms of the policies, is limited to twenty weeks in any consecutive twelve months.
We remanded the case to the District Court for the purpose of affording the plaintiff the opportunity of presenting the proof of her blindness as we suggested she had a legal right to offer, and after a trial and hearing on the remand, the District Court concluded that such proof had been duly presented and accordingly rendered judgment in favor of plaintiff and against the defendant company in the total sum of $5 per week on the two policies, from the date of filing of the suit, limiting the weekly benefits to twenty weeks in any twelve consecutive months, plus legal interest from date of judicial demand, and for all costs.
The defendant has appealed from this last judgment of the District Court, contending in the main that since the proof *Page 549 
offered does not show that "plaintiff can do no more than if she were confined to bed" (the type of sickness provided for in the policies so as to entitle insured to benefits) the suit should have been dismissed.
The appeal was answered by plaintiff who contended that since the case was remanded to enable the plaintiff to have an opportunity to prove that she was totally and permanently blind and such blindness had occurred while her policies were in force, and since overwhelming proof to that effect had been produced on the trial on remand, the appeal of the defendant is frivolous and that judgment should be amended by awarding to plaintiff ten (10%) per cent additional on the amount of the judgment, as a penalty for such alleged frivolous appeal.
We agree with plaintiff that in our original decision we considered and determined all of the legal questions involved in this case and in the interpretation of the insurance policies, and that we remanded the case to the District Court solely for the purpose of allowing plaintiff an opportunity to produce proof, if such she could, that she had become totally and permanently blind during the life of the policies, and that in this appeal the sole question for our consideration is whether or not such proof was made on the trial on remand.
But we cannot agree with plaintiff that the appeal, although based largely on the questions heretofore disposed of in our first decision, is frivolous, since the defendant is entitled to an appeal, as a matter of fact and of law, on any disputed matters involved in the trial on remand.
A study of the testimony taken on the trial on remand will show, briefly, as follows:
Sidney Harp, owner of the Grand Theatre, testified that prior to 1941 the plaintiff had been employed by him for several years at that theatre, but that in 1941 she had been unable to continue her work for the reason that "she is strictly unable to on account of her eyesight."
Frank Matthews, son of the plaintiff (and whose evidence, if unsupported, might be discounted because of that relationship) testified that since January, 1941, his mother had been unable to see enough to be able to work or do anything, and that "she is strictly unable to on account of her eyesight."
And Peter Clark, testifying that he is not related to plaintiff, stated that he had known plaintiff for about ten years; that he rents a room in her house and that she has been entirely unable to take care of herself since January, 1941, and that she is "too blind to see to do anything at all."
Plaintiff herself testified to the same effect as her son Frank Matthews and her roomer, Peter Clark.
The medical testimony consists of two certificates from Dr. Buffington (introduced at the original trial) stating that he had treated and operated on the eyes of plaintiff who was suffering from glaucoma, and the oral testimony of Dr. H.A. Folse and Dr. Dawson T. Martin.
Dr. Folse, who did not examine the plaintiff, appeared solely as a medical expert. Dr. Folse gives an explanation of the eye disease known as glaucoma and says that a person who was suffering from some form of glaucoma, as the certificates of Dr. Buffington showed plaintiff to have been suffering, does not necessarily become blind as of the time he testified. Dr. Folse said, however, that the rate of progress of this disease is variable but the effect of the disease is to eventually cause the total loss of sight.
Dr. Martin did examine the plaintiff at various times. When he examined her on April 1, 1941, he found that she had been operated on for glaucoma of the left eye, but could see out of it at that time. Her right eye had not then been operated on for glaucoma but "I think she had a small rigium operation — McReynolds operation we call it." He did not think she could see out of the right eye at that time. Dr. Martin examined her again between June 5, 1941, and July 5, 1941, but he does not testify what he found then. However, when he examined the plaintiff on May 5, 1943, he found that she had "very little perception — unable to count fingers" and he testified that at that time plaintiff was totally and permanently blind, except for some "very little light perception" and which light perception was caused by the disease. And Dr. Martin says: "She was in such condition that I don't think she could walk down the street by herself. She was led in my office and led out and we had to lead her around in the office. She couldn't see at all."
Defendant introduced the testimony of Sidney A. Marchand, a reputable attorney of Donaldsonville, who saw plaintiff at *Page 550 
various times walking on the streets of Donaldsonville, but whose testimony shows only one time when he says she was unaccompanied and on that occasion plaintiff went to a store on a street corner on a direct line about 300 feet from her house, and it appears that at this time she was walking with a cane and asked for directions to cross the street. The record shows that Mr. Sam A. LeBlanc, Jr., attorney for defendant, was with Mr. Marchand and would, if he testified, corroborate the facts as stated by Mr. Marchand as to this particular occasion. We accept this statement as fully true and correct, but we cannot agree that it, in itself, proves that the plaintiff was and is not totally and permanently blind. This court knows and takes cognizance of the fact that it is neither impossible or unusual for a totally blind person to walk alone and unaided on occasions.
The direct testimony offered by plaintiff and particularly the testimony of Dr. Folse and Dr. Martin convinces us that the plaintiff has successfully carried the burden placed on her and met the opportunity afforded her on the remand, and the judgment rendered in the District Court in favor of plaintiff and against the defendant should be and is affirmed.
LeBLANC, J., recused.